**704**

In the Matter of The INTERNATIONAL GOLD BULLION EXCHANGE, INC., a Florida corp., et al., Debtors.

Earl FAIRCLOTH, Trustee, Plaintiff,

v.

Sanford CLARKE, Defendant.

Bankruptcy Nos. 83–00754–BKC–SMW to 83–00756–BKC–SMW. Adv. No. 85–0060–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

July 9, 1985.

See also Bkrtcy., 50 B.R. 706, Bkrtcy., 50 B.R. 708.

Stewart P. Chambers, Fort Lauderdale, Fla., for trustee.

Patricia A. Redmond, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This cause having come on before the Court on March 27, 1985, upon the Complaint of the Trustee to avoid a preferential transfer pursuant to Section 547 of the Bankruptcy Code and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises does hereby make the following Findings of Fact and Conclusions of Law.

On April 27, 1983, The International Gold Bullion Exchange, Inc. (the "Debtor"), filed its Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code. The Debtor and the Defendant had entered into a contract dated August 4, 1982, for the sale and purchase of 20 one ounce gold Krugerrands. The Defendant paid the Debtor the purchase price of $6,980.00 on August 9, 1982. The Debtor issued to the Defendant a Precious Metals Certificate of Ownership on August 9, 1982.

On March 8, 1983, after repeated demands by the Defendant, the Debtor delivered to the Defendant 20 one ounce gold Krugerrands and 10 one ounce silver

rounds in adjusted satisfaction of the August 4, 1982 precious metals contract.

■ The Court finds that the Complaint alleges all of the elements required under Section 547 of the Code. *Matter of Advance Glove Manufacturing Co.*, 42 B.R. 489 (Bkrtcy.E.D.Mi.1984); *In re Saco Local Development Corp.*, 30 B.R. 870 (Bkrtcy.D.Me.1983); *In re Satterla*, 15 B.R. 166 (Bkrtcy.W.D.Mi.1981). The Court finds that the Defendant received the property of the Debtor in satisfaction of an antecedent debt created on August 9, 1982 and that the dates of delivery of these precious metals were within ninety (90) days next preceding the filing of the Petition by the Debtor for Chapter 11 protection, as is required under Section 547(b)(4)(A) of the Code. Additionally, the Court finds that the Defendant's receipt of these precious metals allowed the Defendant to receive more than he would have received had the Debtor filed its Petition under Chapter 7 of the Code (Liquidation) and there had been a distribution to unsecured creditors under said Chapter. The Court further finds that the Debtor was insolvent on the day of the Debtor's transfer of its precious metals to Defendant, under the presumption of insolvency under Section 547(f) of the Code, which presumption the Defendant left unrebutted.

The Court considered the following Affirmative Defenses, all others either having been abandoned or deemed to be without merit:

(1) The within action by the Trustee is barred under Section 547(c)(2) of the Code as being a transaction in the ordinary course of business;

(2) The Precious Metals Certificate of Ownership rendered by the Debtor to the Defendant represented a security and, thus, possession of said Certificate represented constructive possession of the subject precious metals;

(3) There was no transfer of the Debtor's assets by virtue of the existence of a contract of bailment as between the Debtor and the Defendant on August 9, 1982, the date the Defendant received from the Debtor the Precious Metals Certificate of Ownership.

■ The Court finds that the evidence and testimony does not support the Defendant's Affirmative Defenses outlined above. Initially, the Court finds that the said transaction does not come within the purview of Section 547(c)(2) of the Code. The precious metals transfer on March 8, 1983 was not within forty-five (45) days of the date the debt to the Defendant by the Debtor was incurred and, thus, was not a transaction in the ordinary course of business as between the Debtor and the Defendant. Similarly, the Court finds that neither the Debtor nor the Defendant intended the subject transaction to have effect as a security, as is required under Section 679.102, *Fla.Stat.*, but, rather, that the Certificate of Precious Metals Ownership was intended to merely evidence the indebtedness by the Debtor to the Defendant. Accordingly, the within transaction does not come within the purview of Article 9 (Secured Transactions) of the Uniform Commercial Code and, therefore, Defendant's reliance upon this defense is without merit.

■ In addressing the Affirmative Defense of bailment, a contract for bailment requires that there be a mutual agreement between the parties for a bailment and that, further, there be an actual physical delivery of the items to be bailed into the hands of the bailee. *Puritan Insurance Company v. Butler Aviation-Palm Beach, Inc.*, 715 F.2d 502 (11th Cir.1983); *Blum v. Merrill Stevens Dry Dock Company*, 409 So.2d 192 (3rd Fla.App. DCA 1982); *Rudisill v. Taxi Cabs of Tampa, Inc.*, 147 So.2d 180 (2nd Fla.App. DCA 1962). The Court finds that the evidence does not support the existence of an agreement for bailment and, further, that the Debtor never possessed the precious metals purchased by the Defendant until March 8, 1983, the date of transfer of the subject precious metals.

Lastly, the Court concludes that the value of the subject precious metals on the

day they were received by the Defendant was $8,648.30.

In summary, the Court finds that the Trustee is entitled to judgment against the Defendant for the return of the aforedescribed precious metals or, in the alternative, in the event the Defendant fails to return same within ten (10) days from the date of the Court's Final Judgment rendered herein, the Trustee shall be entitled to a Final Judgment for the value of said precious metals.